## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____ :
:
Heather Rae REED SMITH, :
        Plaintiff, :
:
    v. :
:    Civil No. 18-09639 (RBK)
COMMISSIONER OF SOCIAL :
SECURITY, :    **OPINION**
:
       Defendant. :
_____ :

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon the appeal of Plaintiff Heather Rae Reed-Smith for review of the final decision of the Commissioner of Social Security. [Doc. No. 1]. The Commissioner denied Plaintiff's application for Social Security Disability Insurance benefits, finding that Plaintiff was not disabled as defined by the Social Security Act. As explained below, the decision of the Commissioner is **AFFIRMED**.

## I.    FACTS

### A. Procedural History

On February 11, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 9, 2013. R. 15. The Social Security Administration initially denied Plaintiff's claim on June 5, 2014, and again upon reconsideration on July 28, 2014. *Id.* Plaintiff then filed a request for a hearing,

where she appeared and testified on September 21, 2016, in Pennsauken, New Jersey. *Id.* The ALJ subsequently issued an unfavorable decision on March 1, 2017. R. 15–27. On March 20, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. R. 1–6. Plaintiff then filed this action on May 24, 2018.

## B. Plaintiff's History

Plaintiff Heather Reed-Smith was born on March 12, 1972. Plaintiff's Brief ("Pl. Br.") [Doc. No. 13] at 2. Plaintiff earned a GED and worked as a bus driver for approximately twenty years. R. 72, 85. She lives at home with her husband and her dog. *Id.* In December 2013, she applied for Social Security disability benefits because of a range of health challenges.

Plaintiff suffers from degenerative disk disease, status post anterior lumbar fusion and revision, and carpal tunnel syndrome. R. 17. Plaintiff alleges she was disabled and unable to work from December 9, 2013, the alleged onset date ("AOD"). R. 17. Plaintiff states that at that time, her leg went "dead," requiring a surgical revision to her 2010 lumbar spinal surgery. R. 45. Plaintiff has not engaged in substantial gainful activity since the AOD, at which time she was 41 years of age. R. 17; Pl. Br. at 2.

At her administrative hearing on September 21, 2016, Plaintiff testified about her daily limitations due to neck and back pain. R. 49–71. Plaintiff testified to feeling pain through her neck and radiating down to her shoulder blades due to herniated disks and temporomandibular joint dysfunction ("TMJ"). R. 49. Plaintiff also described sensations of pinching and burning in the lumbar spine and radiating down into the legs and groin, as well as intermittent sciatic pain impacting her right leg. R. 49–50. Plaintiff testified that, on good days, her pain was rated "2 out of 10" on the pain scale, but felt like "15 out of 10" on bad days. R. 50–51. These "bad

days" are admittedly infrequent.  R. 52.  Plaintiff stated her high-intensity pain days occur perhaps once every sixty days, or six times annually.  *Id.*

Plaintiff did testify to daily challenges due to pain.  She complained of a daily pattern of numbness alternating with pain or tingling in her legs, feet, and hands.  R. 57.  Plaintiff indicated that she had to lie down at least four times a day, with periods of rest ranging from a half hour to several hours in length.  R. 54.  Upon questioning by the ALJ, Plaintiff testified that she was able to stand up to 40 minutes and could walk a block and a half without rest.  R. 58–60.  Plaintiff testified that she was unable to bend, stoop, twist, reach overhead, or lift anything heavier than a gallon of milk.  R. 61–62.  She also reported problems with her grasp.  R. 62.  Plaintiff reported limitations on her leisure activities, including an inability to crochet, to decorate for holidays, or to go on walks with her spouse.  R. 64–68.  Plaintiff also complained of feeling overwhelmed by her pain and by her limitations in trying to perform daily tasks.  R. 63–64.

### C. Plaintiff's Relevant Medical History

We now review Plaintiff's medical history before Dr. Kamaldeep Momi, Dr. Stanley Piltin, Dr. George Knod, Dr. James Harrop, Dr. Dajie Wang, Dr. Andrew Ng, and Dr. Jeffrey Lakin, among others.

#### *1.  Dr. Momi*

Dr. Kamaldeep Momi is an orthopedic surgeon.  He performed Plaintiff's original February 2010 L5-S1 fusion surgery, and managed Plaintiff's post-operative care through May 2011.  R. 368.  On December 18, 2013, Plaintiff returned to Dr. Momi reporting increased lumbar pain and numbness in her legs.  *Id.*  In examining Plaintiff's lumbar spine, Dr. Momi noted that Plaintiff had diminished and painful range of motion in all directions, though he reported no paravertebral muscle spasm, step-offs, or deformities.  *Id.*  Dr. Momi noted no

tenderness to palpation over the sacroiliac joints but severe and reproducible pain to palpation at the L5-S1 level. *Id.* Dr. Momi opined that Plaintiff may have an adjacent segment deterioration or residual pain from loose hardware due to her 2010 lumbar surgery, and referred Plaintiff for an MRI. R. 369.

Dr. Momi reviewed Plaintiff's MRI on January 10, 2014. R. 370. The MRI indicated significant artifact at L5-S1 and an increase in signal in the L5 vertebral body, but no change to Plaintiff's L4-L5 disc compared to prior imaging from 2010. *Id.* Dr. Momi consequently ordered a CT scan to determine if hardware or arthrodesis from the February 2010 surgery had loosened or broken down. R. 371. Subsequent review of the CT scan was inconclusive, which led Dr. Momi to order a bone scan to rule out a sacral insufficiency fracture. R. 374. When the bone scan was negative for fracture, Dr. Momi determined that the only possible cause of Plaintiff's pain was hardware loosening, and recommended that Plaintiff undergo a revision posterior hardware removal, fusion, and placement of stem cell allograft. R. 377.

Plaintiff underwent surgery with Dr. Momi on March 24, 2014. This surgery included revision laminotomy and nerve root decompression with L5-S1 intertransverse fusion. R. 242. At a post-operative check one month later, Dr. Momi noted that Plaintiff's condition improved as expected, with an increase in mobility and decrease in numbness. R. 479–80. Plaintiff's general examination indicated full range of motion of the lumbar spine with minimal discomfort. *Id.* Dr. Momi opined that Plaintiff's postsurgical low back pain would continue to improve with time. *Id.* Dr. Momi then referred Plaintiff for regular physical therapy. R. 480.

Plaintiff returned to Dr. Momi on May 5, 2014. Plaintiff complained of increased pain, which Dr. Momi attributed to discontinuation of narcotics. R. 920. On June 9, 2014, Dr. Momi noted that Plaintiff demonstrated shaking in her right lower extremity, and continued numbness

in both legs as well as right-sided groin and hip pain.  R. 922–23.  Dr. Momi ordered both a CT

scan and an MRI to assess any possible sources of shaking and pain.  R. 923.  The subsequent

CT scan indicated satisfactory appearance of the fusion device at L5-S1 with no evidence of

spinal stenosis at any level.  R. 860.  The subsequent MRI showed no cord compromise, specific

focal nerve root compression, vertebral body misalignment, or disc abnormality.  R. 861–63.

### 2. *Dr. Piltin*

Dr. Stanley Piltin is a chiropractor and treated Plaintiff's low back pain.  According to

treatment records, Dr. Piltin first examined Plaintiff in March 2004, but treatment for pain in the

lumbar spine dates to January 2010, prior to Plaintiff's first surgery.  R. 426, 429.

On March 19, 2010—just prior to Plaintiff's revision surgery—Dr. Piltin noted muscle

spasm, restricted motion, and tenderness at various points from the neck down to the lumbar

spine.  R. 444.  Dr. Piltin noted that Fabere's and Kemp's were positive bilaterally with local

pain, heel walk and seated Bechterew's were positive on the right, and straight leg raise was

positive on the right side with local pain.  R. 445.  Muscle strength and reflexes were normal and

equal with few exceptions.  *Id.*  Dr. Piltin noted limited range of motion with Plaintiff reporting

pain levels ranging from moderate to significant.  *Id.*

Dr. Piltin saw Plaintiff again on March 18, 2014.  In his treatment notes, Dr. Piltin opined

that Plaintiff suffered from six different conditions and that she was totally and completely

disabled.  R. 445.  Dr. Piltin diagnosed Plaintiff with cervical radiculitis/neuritis, cervical disc

bulging/protrusion, sacroiliac syndrome, lumbar disc bulging/protrusion, lumbar radiculopathy,

and thoracic myofascial pain syndrome.  *Id.*  Based on his exam findings, Dr. Piltin opined that

Plaintiff was completely disabled from her prior employment as a bus driver.  *Id.*  Dr. Piltin

concluded that Plaintiff had serious physical limitations.  *Id.*  She could not sit or stand for

moderate periods, could not bend, and was limited in her ability to walk moderate distances. *Id.*

Dr. Piltin cited both numbness in Plaintiff's feet and weakness in her lower extremities as

contributing to Plaintiff's limitations as he assessed them. R. 445–46. Dr. Piltin opined that

Plaintiff's disability was permanent. R. 446.

### 3. Dr. Knod

Dr. George Knod is a physiatrist and created a report for Plaintiff's application for

benefits. R. 261. On May 20, 2014, Dr. Knod examined Plaintiff at the request of Plaintiff's

attorney. R. 261. Dr. Knod's subsequent report summarized Plaintiff's diagnostic and surgical

histories as well as Plaintiff's self-reported history of pain and numbness in her lower back, hips,

groin, legs, and feet. R. 262–64. Dr. Knod noted that treatment for Plaintiff's lower back pain

included physical therapy, chiropractic treatment, medications, and two spinal surgeries. R. 263.

Dr. Knod indicated, based on Plaintiff's subjective description, that Plaintiff experienced back

and leg pain from sitting, standing, or walking, as well as anytime she was unable to regularly

change position. *Id.* Dr. Knod noted Plaintiff's report that her pain had a substantial impact on

her ability to perform basic self-care and required her to rest frequently. R. 264.

Dr. Knod examined Plaintiff and reported abnormalities in sensation, range of motion,

and joint pain. Dr. Knod noted that Plaintiff was able to ascend to the examining table

independently but slowly. R. 266. In Plaintiff's right lower extremity there was decreased

sensation to pinwheel testing. *Id.* Plaintiff demonstrated generally intact motor function in the

lower extremities. *Id.* Lumbar range of motion was restricted by pain and there was significant

lumbar muscle spasm. *Id.* Dr. Knod noted that Plaintiff complained of sacroiliac joint pain upon

palpation. *Id.* Dr. Knod also described symptoms he believed to be consistent with diagnosis of

right cubital tunnel syndrome, including positive Tinel's sign at the ulnar groove of both elbows.

*Id.* Plaintiff demonstrated diminished grip strength bilaterally. *Id.* Plaintiff described tenderness to palpation over her thumb joints and reported discomfort in her wrists with end range of motion. *Id.*

Dr. Knod subsequently opined as to Plaintiff's diagnoses and disability status. R. 267. Dr. Knod's impression was that Plaintiff suffered from lower extremity sensory deficits, low back and lower extremity radicular pain, weakness and numbness in the hands, bilateral cubital tunnel syndrome, degenerative joint disease of the carpometacarpal joints, urinary urgency and stress incontinence, irritable bowel syndrome, and situational depression. *Id.* Due to these impressions, Dr. Knod opined that Plaintiff was totally and permanently disabled and unable to perform any substantial gainful work. *Id.* Dr. Knod also opined that Plaintiff's disability was permanent, produced constant and unpredictable pain, and required narcotic medication with limiting side effects. R. 267–68.

### 4. Dr. Harrop

Dr. James Harrop is a neurosurgeon and examined Plaintiff twice following her revision surgery. On August 21, 2014, Dr. Harrop examined Plaintiff and reviewed her diagnostic history. R. 220. Dr. Harrop and Plaintiff discussed possible further steps to determine an ultimate cause of her dysfunction. *Id.* Dr. Harrop noted that it was rare for an individual of Plaintiff's age to have her level of deterioration in the cervical and lumbar spine as well as in the hips. *Id.* Dr. Harrop suggested Plaintiff be evaluated by rheumatology. *Id.* Plaintiff's subsequent visit to a rheumatologist ruled out celiac disease as an issue for Plaintiff's joint pain. R. 250.

Dr. Harrop examined Plaintiff for a second time nearly a year later on June 4, 2015. He then reported that, overall, Plaintiff was doing fairly well. R. 644. In describing Plaintiff's

recent CT scan and MRI, Dr. Harrop reported that Plaintiff's flexion and extension films showed no instability and that the MRI showed no evidence of cord compression. *Id.* Dr. Harrop noted that he was pleased with Plaintiff's progress and that Plaintiff was as well. *Id.* Dr. Harrop indicated that no additional treatment was required at the time of examination. *Id.*

5. *Drs. Wang and Ng*

Drs. Dajie Wang and Andrew Ng are anesthesiologists and treated Plaintiff for pain management. On September 15, 2014, Dr. Wang examined Plaintiff and reviewed her diagnostic records. R. 251–52. Dr. Wang noted Plaintiff's report of pain in the lower back, bilateral groin, and feet, but also that Plaintiff reported some pain relief from aquatic exercise and chiropractic manipulation. R. 251. Upon examination, Dr. Wang noted decreased range of motion in the lumbar spine and tenderness to palpation of the hip joints. *Id.* Dr. Wang subscribed a trial of Neurontin for pain, and referred Plaintiff to a psychologist for evaluation and pain coping techniques. *Id.*

Dr. Wang saw Plaintiff on November 13, 2014 for a follow-up evaluation. R. 250. Dr. Wang noted that Plaintiff continued to report chronic low back and bilateral hip pain. *Id.* Upon examination, Dr. Wang noted positive tenderness and decreased range of motion in the lumbar spine, with lumbar muscle spasm and positive tenderness to palpation in the bilateral SI joints. *Id.* Dr. Wang advised Plaintiff as to the risks and benefits of SI joint injections, to which Plaintiff consented. *Id.* Plaintiff received bilateral SI joint injections on November 18, 2014. R. 248.

On December 11, 2014 Dr. Andrew Ng saw Plaintiff for a second follow-up evaluation. *Id.* Plaintiff reported 50 percent relief of pain from her SI joint injections. *Id.* Upon examination, Dr. Ng noted positive tenderness to light palpation of the lumbar and cervical spine

with painful range of motion. *Id.* Dr. Ng reported that Plaintiff continued to find relief from aqua therapy, general physical therapy, and medication. *Id.* Dr. Ng also reported that Plaintiff denied any adverse side effects from her current Neurontin and Valium dosages. *Id.* Dr. Ng determined no additional treatment was required and recommended that Plaintiff return in 2 to 3 months for a follow-up. *Id.*

*6. Dr. Lakin*

Dr. Jeffrey Lakin is an orthopedic surgeon and examined Plaintiff for purposes of an Independent Medical Evaluation. On September 24, 2014, Dr. Lakin reviewed copies of Plaintiff's previous CT scans, bone scans, and MRIs. R. 472. Dr. Lakin concurred with radiology findings, including normal MRI of the thoracic spine on June 7, 2014, and satisfactory appearance of the fusion device in Plaintiff's CT scan from June 17, 2014. R. 474. Upon examination, Dr. Lakin noted limited lumbar range of motion and a positive straight-leg-raise test on the right in the supine position. R. 472–73. Dr. Lakin also noted mild limitations of motor strength in the lower extremities. R. 473.

Dr. Lakin also opined as to Plaintiff's disabled status. R. 475. Dr. Lakin's impression was of intractable lower back pain with failed lower back surgery, resulting in significant decreased range of motion, tenderness, and weakness. R. 474–75. Referencing the job description for bus drivers, Dr. Lakin opined that due to significant pain, decreased motion, decreased tolerance for sitting and standing, weakness, and limited mobility, Plaintiff was totally and permanently disabled from the performance of her job as a bus driver. R. 475.

*7. Physical Therapy History*

Plaintiff sought both land and aqua physical therapy following her revision surgery in March 2014. The record reflects that Plaintiff was referred for a course of treatment at AquaHab

Physical Therapy from August 1, 2014 to November 3, 2014. R. 932–43. Plaintiff reported to a treating physician that aquatic therapy was successful in lessening her pain. R. 251. Plaintiff's AquaHab discharge summary noted that Plaintiff was "independent with [the] program" and that "all goals [were] met." R. 924.

Plaintiff subsequently sought physical therapy with Phoenix Rehabilitation from June 15, 2015 to July 30, 2015. R. 649–67. Phoenix Rehabilitation developed a plan for Plaintiff that included therapeutic exercise, electrical stimulation, traction, ultrasound, and aquatic therapy. R. 654. Plaintiff reported to therapists that traction and aquatic therapy lessened her pain. R. 661. Upon discharge, Phoenix Rehabilitation noted that Plaintiff's "discharge prognosis [was] excellent" and that Plaintiff "was issued a home traction unit." R. 666. In discharging Plaintiff, physical therapist Martina Kondas noted that Plaintiff's "anticipated goals and expected outcomes [had] been achieved." R. 667.

### D. The ALJ's Decision

After consideration of the entire record, the ALJ issued his Decision on March 1, 2017. R. 27. The ALJ concluded that Plaintiff met the insured status requirements of the SSA through December 31, 2018. R. 17. The ALJ also concluded that Plaintiff had not engaged in substantial gainful activity since December 9, 2013, the alleged onset date. *Id.* Next, the ALJ determined that Plaintiff had three "severe impairments": degenerative disc disease, status post anterior lumbar fusion and revision, and carpal tunnel syndrome. *Id.* The ALJ then compared Plaintiff's impairments to the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, and determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

The ALJ then assessed Plaintiff's residual functional capacity. *See* R. 18. After considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except she could occasionally push and pull with right lower extremity; occasionally climb, balance, stoop, kneel, crouch, and crawl; and frequently reach, handle, finger, and feel. *Id.* The ALJ noted, however, that Plaintiff must avoid concentrated exposure to extreme cold and heat, wetness and humidity, and hazards such as unprotected heights and moving machinery. *Id.* In addition, the ALJ stated that Plaintiff was limited to unskilled work involving routine and repetitive tasks with occasional changes in the work setting. *Id.* The ALJ restricted Plaintiff to goal-oriented work rather than quota or production-based work. *Id.*

Based on Plaintiff's RFC assessment, the ALJ determined that Plaintiff was unable to perform any past relevant work. R. 25. Then, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 26. As such, the ALJ determined that Plaintiff had not been under a disability, as defined by the SSA, from December 9, 2013 to the date of the decision. R. 27.

## II.    LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a

preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Secretary of Health & Human Services*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.    DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12.

First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff makes three arguments. First, Plaintiff argues the ALJ erred in failing to address a significant amount of contrary medical evidence when conducting the RFC assessment. Second, Plaintiff argues the ALJ erred in impermissibly substituting his own judgment for that of the sources in the medical record, thus improperly rejecting the opinions and treatment or examination findings of Drs. Piltin, Harrop, Knod, and Lakin. Finally, Plaintiff argues the ALJ did not adequately consider Plaintiff's testimony regarding her limitations when he failed to perform a function-by-function analysis of Plaintiff's capacity for work.

## A.  The ALJ's RFC Assessment was Supported by Substantial Evidence

Plaintiff first argues that the ALJ "relied on highly selected treatment notes" to indicate Plaintiff did not wish to continue with narcotic medication. Pl. Br. at 12. Specifically, Plaintiff states that "the ALJ did not mention . . . that Plaintiff was being maintained on Valium at this time, and that Gabapentin was added to her medication regimen." *Id.*

The law clearly prevents an ALJ from ignoring probative or conflicting evidence. *See Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1980) (*Cotter I*) (remanding because a reviewing court cannot tell if "significant probative evidence was not credited or simply ignored" if the ALJ does not explain the reasons for rejecting relevant evidence); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.") (original quotation omitted). The Court must therefore determine if the ALJ ignored Plaintiff's use of Valium and Gabapentin in reaching his conclusion as to Dr. Momi's opinion and whether such evidence would have impacted the rendered ALJ Decision.

Here, Plaintiff fundamentally misreads the ALJ's Decision. While Plaintiff suggests the ALJ "chose not to mention" her use of Valium, Pl. Br. at 12–13, the Decision states clearly: "Treatment notes from Dr. Momi for June 2014 indicated that the claimant was completely weaned off her narcotic medication and she was taking *Valium* once a day." R. 22 (emphasis added). Plaintiff also suggests the ALJ failed to mention her use of Gabapentin, Pl. Br. at 12, but the Decision states clearly that, in September 2014, Dr. Wang of Jefferson Anesthesia Associates "prescribed a trial on *Neurontin* . . . ." R. 23 (emphasis added). Neurontin is a brand name for Gabapentin. Defendant's Brief ("Def. Br.") [Doc. No. 14] at 13. This Court therefore rejects Plaintiff's argument.

Further, the Court notes that Dr. Momi's treatment record appears fully consistent with the ALJ's finding that Plaintiff improved post-surgery and weaned off narcotic medication. For example, on examination, Dr. Momi reported that Plaintiff's shaking was visible, but Plaintiff had 5/5 strength and no abnormal reflexes. R. 922. While noting persistent right-side pain, Dr. Momi also reported that Plaintiff had improved lower back pain and noted that Plaintiff did "not feel actual pain in her legs, as she [said] they still [felt] numb." R. 923. Most importantly, Dr. Momi reported that Plaintiff "has completely weaned off of her narcotic medications . . . and is on Valium only one time daily." R. 922. There is no indication that the ALJ selectively considered Dr. Momi's records.

Plaintiff next challenges the adequacy of the ALJ's consideration of the full medical record. Plaintiff alleges, for example, that the ALJ did not adequately consider all physical therapy records available in making the RFC assessment. Pl. Br. at 13–14. Plaintiff states that the ALJ impermissibly "placed himself in the role of physical therapist" when concluding that she had met her physical therapy goals given her contrary testimony as to the continued presence of pain *Id.* at 13. Generally, Plaintiff contends that the physical therapy records as a whole are inconsistent with the ALJ's RFC assessment. More specifically, Plaintiff appears to misstate the ALJ's consideration of the physical therapy records to suggest they formed an essential basis of the ALJ's interpretation of Plaintiff's testimony.

The ALJ must consider and weigh all of the medical evidence before him. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter I*, 642 F.2d at 707. If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter I*, 642 F.2d at 706–07. The explanation need not be comprehensive; "in most cases, a sentence

or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) (*Cotter II*). An ALJ need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42.

Here, contrary to Plaintiff's argument, the ALJ adequately evaluated the medical record. The ALJ cites physical therapy records, as well as records of treating physicians that reference Plaintiff's physical therapy, to support his conclusion that Plaintiff was generally meeting goals and finding relief without the aid of narcotics. R. 24–25. Contrary to Plaintiff's assertions, the ALJ provides extensive medical evidence to undercut Plaintiff's claim and does not simply rely on physical therapy records in discounting Plaintiff's statements regarding her limitations. For example, the ALJ explained,

> Her pain medications helped to decrease her pain and she denied any adverse side effects. She completely weaned off narcotic medication. She also had relief from aquatic exercise and chiropractic manipulation. She met all physical therapy goals . . . . In June 2015, she was doing quite well and . . . her cervical MRI showed no evidence of cord compression . . . . All of this evidence does not support claimant's allegations of disability and contradicts the opinions rendered by Drs. Pilitin [sic], Knod, and Lakin.

R. 24–25 (internal citations omitted). Thus, the physical therapy record appears to be but one reason of many to support the ALJ's RFC assessment.

Further, the Court reviewed the physical therapy records and finds them to be generally consistent with the ALJ's treatment of Plaintiff's complaints. The AquaHab Physical Therapy discharge form at issue, R. 924, allows a therapist to indicate a Plaintiff's progress upon leaving the program. The options permit "all goals met," "goals partially met," or "non compliance." *Id.* The AquaHab physical therapist report clearly indicates "all goals met." The Court finds the ALJ's brief mention of this form, in the context of various other evidence more thoroughly discussed, to wholly support the determination that Plaintiff's complaints lacked a record foundation.

Plaintiff's related efforts to suggest the ALJ ignored other physical therapy treatment notes are unavailing. Plaintiff points to records from Phoenix Rehabilitation in June 2015 which report that she had a 54% on the "Oswestry Low Back Disability Index." R. 651. But Plaintiff's argument fails for three reasons. First, this report from Phoenix Rehabilitation is based on Plaintiff's subjective report of pain, specifically her checking a series of boxes. This is not an objective medical report and therefore the ALJ was not required to credit the findings. *See Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[a]n ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted.") Second, even if the Court determined this to be an objective medical report, it is not entirely clear that it is inconsistent with the ALJ's treatment of Plaintiff's claims. And third, Plaintiff's Discharge Summary from Phoenix Rehabilitation supports the findings from AquaHab. Specifically, it states "[a]nticipated goals and expected outcomes have been achieved" and that "[t]he patient's discharge prognosis is excellent." R. 665–67.

Plaintiff finally argues that the ALJ erred in failing to include limitations concerning Plaintiff being "off-task" in the RFC determination. Plaintiff again misunderstands what the law requires. Most obviously, the ALJ is not required to consider limitations that have not been credibly established. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (finding that the ALJ must only convey to the vocational expert the claimant's "credibly established limitations") (original emphasis removed).

As explained in the ALJ's comprehensive analysis of the record evidence, he determined that Plaintiff was limited to unskilled work involving routine and repetitive tasks and failed to conclude that Plaintiff would be off task more than 10% of the day. R. 18. The ALJ questioned

the vocational expert ("VE") about jobs in the national economy for a worker with Plaintiff's

RFC—including up to 10% off-task time—and found Plaintiff capable of performing available

jobs. R. 26, 75. Plaintiff's characterization of the VE's testimony as contradicting the RFC

assessment is simply inaccurate. R. 74. Because the RFC assessment is consistent with the

record, the ALJ's Decision is supported by substantial evidence.

**B. The ALJ Properly Weighed Treating and Examining Source Opinions and Findings**

Plaintiff next argues that the ALJ impermissibly substituted his own judgment for that of

multiple treating and examining sources in the medical record. Plaintiff alleges that the ALJ

failed to consider both opinions and evidence from Plaintiff's treating chiropractor as well as

three other treating or examining physicians. Pl. Br. at 16–19.

An ALJ has a duty to consider all medical evidence placed before him and must provide

an adequate reason for dismissing or discarding evidence. *Wier on Behalf of Wier v. Heckler*,

734 F.2d 955, 961 (3d Cir. 1984). An ALJ must resolve conflicts in the evidence and cannot rely

on a "single piece of evidence" that "will not satisfy the substantiality test." *Mason v. Shalala*,

994 F.2d 1058, 1064 (3d Cir. 1993). Likewise, the ALJ is responsible for assigning weight to the

medical opinions of record. *See* 20 C.F.R. § 404.1527. The ALJ determines how much weight to

assign each opinion based on the length of the treatment relationship, frequency of examination,

nature and extent of the treatment relationship, level of evidentiary support, consistency with the

record, specialization of the physician, and other factors. *See* 20 C.F.R. § 404.1527(c).

Furthermore, the ALJ can reject a treating or examining physician's opinion if its findings are

inconsistent with other medical evidence in the record. *See Plummer*, 186 F.3d at 429; 20 C.F.R.

§ 404.1527(c).

Here, Plaintiff first alleges that the ALJ failed to adequately consider treating chiropractor Dr. Stanley Piltin's examination evidence, or to properly weigh Dr. Piltin's opinion on Plaintiff's disabled status. Pl. Br. at 16–17. Plaintiff suggests that the ALJ's decision to assign "little weight" to Dr. Piltin's opinion was in fact due to an erroneous belief that Dr. Piltin's assessment was based on a one-time examination. *Id.*

Plaintiff's allegation is unfounded; the ALJ never indicated a belief that Dr. Piltin had only examined Plaintiff once. Furthermore, the ALJ gave adequate consideration to Dr. Piltin's treatment records in describing Dr. Pitlin's findings in detail. R. 20–21. And, as more fully explained above, the overall medical record supported the ALJ's conclusion that Dr. Piltin's opinion was inconsistent with other opinions in the record. *See also* R. 24–25.

The ALJ's ultimate decision to give little weight to Dr. Piltin's opinion as to Plaintiff's total disability was similarly appropriate. There are certain medical source opinions on issues reserved to the Commissioner that are not given controlling weight because they are administrative findings that are dispositive of the case. 20 C.F.R. § 404.1527(d). Therefore, a treating professional's opinion that a claimant is "disabled" or "unable to work" is not a "medical opinion" and is not entitled controlling weight because whether the claimant is "disabled" within the meaning of the Act is an administrative opinion reserved for the Commissioner. *See* 20 C.F.R. § 404 .1527(d)(1) ("[The Commissioner] is responsible for making the determination or decision about whether [a claimant] meets the statutory definition of disability . . . . A statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [a claimant is] disabled."). Therefore, the ALJ's rejection of Dr. Piltin's disability determination was appropriate. Such a determination rests solely with the ALJ.

Plaintiff likewise suggests that the ALJ erred in failing to adequately consider the findings of treating physician Dr. James Harrop. There is no merit to this argument. The ALJ considered treatment records from both of Plaintiff's visits to Dr. Harrop, describing Dr. Harrop's findings at both encounters. R. 23–24. The ALJ acknowledged Dr. Harrop's August 21, 2014 treatment notes regarding increased back and groin pain and high degree of deterioration in the cervical and lumbar spine and hips. R. 23. The ALJ also noted that Plaintiff returned to Dr. Harrop on June 4, 2015 and that he reported Plaintiff was doing "quite well" and that both Dr. Harrop and Plaintiff were pleased with Plaintiff's progress. R. 24. There is every indication that the ALJ thoroughly considered Dr. Harrop's treatment notes in formulating his Decision.

Plaintiff next argues that the ALJ substituted his judgment for that of two examining physicians, Dr. George Knod and Dr. Jeremy Lakin, in failing to give weight to their post-examination opinions of Plaintiff's condition. Both Dr. Knod and Dr. Lakin conducted a single examination of Plaintiff, reported on examination findings, and expressed opinions as to Plaintiff's disability status.

As with Drs. Piltin and Harrop, the ALJ's Decision shows ample evidence that he considered the examination notes of Drs. Knod and Lakin. Dr. Knod's examination notes are extensively summarized in the Decision. R. 21–22. The ALJ likewise summarized Dr. Knod's opinions on Plaintiff's disability status in light of her limitations and medications. R. 22. Dr. Lakin's examination findings and opinions regarding Plaintiff's disability were likewise summarized and evaluated by the ALJ. R. 23–24. Because an ALJ is tasked with the credibility assessment of contradictory medical opinions, it is permissible for him to give little or no weight to some of the record in order to make a final determination. *See Plummer*, 186 F.3d at 429.

After adequate consideration, the ALJ found that the majority of the record contradicted the opinions of Drs. Knod and Lakin. R. 25. As with Dr. Piltin, the ALJ likewise declined to assign weight to the disability opinions of Drs. Knod and Lakin, as the assessment of disability is solely within the ALJ's authority. *See* 20 C.F.R. § 404 .1527(d)(1). Therefore, we find that the ALJ's consideration of contradictory medical opinions was reasonable, and the resultant RFC assessment is supported by substantial evidence.

### C. The ALJ's RFC Assessment Adequately Considers Plaintiff's Limitations

Finally, Plaintiff argues that the ALJ failed to perform a function-by-function RFC assessment, and thus to give proper consideration to Plaintiff's testimony regarding her exertional limitations and pain. Pl. Br. at 19–20. Plaintiff specifically alleges that the ALJ "completely failed to address the exertional limitations of sitting, standing, walking, lifting, and carrying . . . ." Pl. Br. at 19.

Social Security Ruling 96-9p requires that an RFC assessment "include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." 1996 WL 374185 (July 2, 1996). The Third Circuit found a function-by-function assessment to be adequate where the ALJ evaluated specific activities or reviewed all relevant evidence in the record. *See Garrett v. Commissioner of Social Security*, 274 Fed. App'x 159, 163 (3d Cir. 2008); *Tuohy v. Commissioner of Social Security*, 127 Fed. App'x 62, 66 (3d Cir. 2005). The ALJ therefore need not tacitly accept Plaintiff's testimony, but instead conducts a credibility assessment as with other opinions on the record.

When statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on

the credibility of the statements based on a consideration of the entire case record. 20 C.F.R. § 416.929(c)(4). The ALJ "can reject such claims if he does not find them credible." *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 433 (3d Cir. 1999). A reviewing court should defer to an ALJ's credibility determination, especially where he has the opportunity at a hearing to assess a witness's demeanor. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

Here, we find Plaintiff's argument regarding the RFC assessment's inadequacy to be without merit. Plaintiff appears to fundamentally misunderstand that the ALJ must consider her complaints but not necessarily credit them. The ALJ's Decision describes careful consideration of the entire record, but ultimately concludes that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R. 24. The ALJ considered the full medical record, as discussed above at length, including assessments as to Plaintiff's limitations, and incorporated opinions and findings in the RFC assessment when said opinions and findings were determined to be credible. R. 21–24.

Plaintiff also disregards instances when the ALJ clearly considered her limitations. As the record shows, the ALJ considered Plaintiff's limitations when assigning little weight to the opinions of State agency medical consultants. R. 25. The consultants opined that Plaintiff had the capacity for light work, but the ALJ found that the record refuted that recommendation when he determined that Plaintiff "could perform, at most, a limited range of unskilled sedentary work." *Id.* The ALJ in fact credited several of Plaintiff's limitations in adding a number of restrictions to the determination that Plaintiff could perform sedentary work—which is already the lowest exertional level—in adding that Plaintiff must avoid exposure to hazards and could

only perform goal-oriented work. R. 18. The resulting RFC assessment, therefore, was more restrictive than what State agency medical consultants had recommended, and accounted for those limitations credibly supported by the record. *Id.* In light of these facts, the ALJ satisfied the requirements of step four.

**IV. CONCLUSION**

We will not disturb the Commissioner's decision. **AFFIRMED**.


Dated:  06/20/19                                        s/ Robert B. Kugler

                                                        ROBERT B. KUGLER

                                                        United States District Judge